NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0786n.06

No. 08-4548

FILED

Dec 14, 2009

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES A. WEIMER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| HONDA OF AMERICA MFG., INC., | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

**Before:  GILMAN and GRIFFIN, Circuit Judges; and STEEH, District Judge.**[*]

**GEORGE CARAM STEEH, District Judge.**  James Weimer requested FMLA leave from

Honda of America ("Honda") after suffering a head injury at work.  Weimer was examined by

several of Honda's doctors who signed him off work based on his described symptoms.  After

Weimer returned to work, two of his neighbors reported watching Weimer build a new front porch

on his home while he was on leave.  After conducting an investigation into Weimer's activities while

on FMLA leave, Honda terminated him for making misrepresentations in violation of Honda's

Standards of Conduct.

At trial, Weimer alleged a single claim that Honda discharged him in violation of the FMLA.

The jury rendered a verdict for Honda.  On appeal, Weimer argues that the trial court erred by

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District
of Michigan, sitting by designation.

1

instructing the jury that Weimer had to prove that Honda's reason for discharging him was a pretext for unlawful discrimination, and by instructing the jury that Honda could prevail if it was wrong as to its stated reason for discharge, but its belief was honestly held. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On February 21, 2006, Weimer was working on the assembly line at Honda's Marysville Auto Plant. Another employee pulled down a hatchback and hit Weimer across the top of his head. Weimer suffered a bump on his head and was taken to the emergency room. A CT scan of Weimer's head and an x-ray of his neck were normal.

The next day, Weimer called Broadspire, Honda's third-party leave administrator, to request a leave of absence. His leave request was granted starting February 22, 2006. That day he also followed up with Health Partners (HP), an on-site clinic dedicated solely to examining and treating Honda employees. On February 23, Weimer saw HP's Dr. Sudha Thompson and reported that he was suffering from nausea, headaches, and blurred vision. Because of Weimer's report of blurred vision, Dr. Thompson told him not to drive. Weimer was taken off work pending an appointment with an eye specialist.

On February 23, 2006, an application for a Zoning and Building Permit was filed for Weimer's home at the Department of Engineering for Logan County, Ohio. The application described the home project as removing a 20 foot by 8 foot porch, replacing it, plus constructing a 12 foot by 8 foot addition. On February 24, 2006, Weimer signed and paid for an application for a

Residential Building Permit from the Logan County Building Authority. The Building Permit listed Weimer as the general contractor and the improvement as a new front porch, and "grade and below grade excavation."

On March 2, 2006, Weimer drove himself to his HP appointment. Weimer was seen by Dr. David R. Dunkin, who testified that he asked whether Weimer was doing any projects at home. Weimer denied doing anything but sitting around. Weimer reported headaches, difficulty focusing, and blurred vision, and Dr. Dunkin told him that it was not safe to drive or use power tools. On March 2, all objective tests were normal, including neurological tests. Dr. Dunkin wrote Weimer off of work based on Weimer's reported blurred vision and headaches. On March 10, Weimer again reported blurred vision and headaches to Dr. Dunkin. A referral to a retinal specialist was scheduled for March 15, 2006.

On March 15, 2006, Weiner was captured on videotape working on his porch. That same day, Weimer called his physician and explained that he was capable of working and wanted to return to work that day. Weimer returned to work the next day, after being released for work by Dr. Dunkin.

Prior to trial, Dr. Dunkin watched the March 15, 2006 video of Weimer building his porch. Dr. Dunkin testified that the activities Weimer performed on the video were not consistent with his reports of headaches and blurred vision. Dr. Dunkin testified that he was familiar with the job processes in Weimer's department, and that Weimer would have been fully capable of performing his job given the activities observed on the video.

On April 4, 2006, Honda's Associate Relations Department received an anonymous e-mail reporting that on March 13, 2006 Weimer was seen "working on his front porch," and up on a ladder "hammering on the roof" for the last few weeks. John Lammert, the Associate Relations Plant leader, asked Jan Blanton to begin an investigation. Ms. Blanton interviewed Weimer, asking about his activities while he was off from work. Weimer responded that he had been going to doctor's appointments and that he was not allowed to drive at night. Ms. Blanton interviewed Weimer a second time, and Weimer admitted to working on his porch while on FMLA leave.

Lammert reviewed the investigation into Weimer's leave activities, including the interview with Weimer, interviews with two witnesses who saw Weimer working on his porch, the surveillance video, and the investigator's report. Lammert was familiar with Weimer's job processes and concluded that Weimer's physical activities in the video were comparable to his regular job processes at Honda.

Honda concluded that Weimer misrepresented his condition to obtain the leave, and then spent the time off building a porch on his home. The Associate Handbook states that it is a violation of Honda's Associate Standards of Conduct to "[m]isreprepresent facts or falsify records or reports, such as personnel records, medical records, leave of absence documentation, inventory counts, quality control reports, etc." Honda discharged Weimer on April 20, 2006.

## B. Procedural history

Weimer made objections to the jury instructions on the record in the district court. Relevant to this appeal, Weimer objected to the instruction encompassing the honest-belief defense, as well as to the causal connection and pretext instructions.

## II. ANALYSIS

### A. Standard of review

Jury instructions are to be reviewed "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *Arban v. West Publishing Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998)). "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Id*. The correctness of jury instructions is a question of law; therefore a district court's jury instructions are reviewed de novo. *Williams ex. rel Hart v. Paint Valley Local School Dist.*, 400 F.3d 360, 366 (6th Cir. 2005).

### B. Discussion

The FMLA prohibits an employer from interfering with an employee's rights in two ways - interfering with the exercise of such rights, and discharging or discriminating against the employee for opposing an unlawful practice. 29 U.S.C. §2615 provides:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

5

Issues pertaining to an employee who has exercised, or attempted to exercise, the right to take FMLA-protected leave are addressed in 29 U.S.C. §2615(a)(1). That section makes it unlawful for an employer to interfere with or restrain the employee's rights under the FMLA. This Circuit has found that (a)(1)'s language prohibiting employers from interfering, restraining or denying the exercise or attempted exercise of any FMLA right includes retaliatory discharge for taking leave. *Skrjanc v. Great Lakes Power Ser. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). An employee also has a cause of action for retaliation for bringing forth complaints about unlawful behavior by an employer under the FMLA. 29 U.S.C. §2615(a)(2).

The district court noted Weimer's refusal to identify his claim in its Opinion and Order denying the parties' cross motions for summary judgment: ". . . Weimer's pleading fails to make clear whether he is proceeding under 29 U.S.C. § 2615(a)(1) or (a)(2)." Even at trial, Weimer refused to articulate whether his single claim was one for interference under 29 U.S.C. § 2615(a)(1) or for retaliation under § 2615(a)(2). At the charging conference, Honda's counsel objected to Weimer's insistence upon refusing to identify his FMLA claim as one for interference or retaliation. Weimer's counsel refused: "[M]y response, actually, is that all claims are interference and restraint claims . . . it is truly one claim no matter if it has two manners of proof." Although Weimer's counsel did not specify which subsection of the FMLA he was proceeding under, the allegations are that Weimer was terminated for exercising his rights under the FMLA. Weimer does not contend that he was discharged for *opposing* an unlawful practice under the FMLA. We therefore conclude that this case is brought pursuant to 29 U.S.C. §2615(a)(1) for interference and restraint.

6

## 1. *Arban v. West Publishing Corp.*

This court reviewed and approved FMLA jury instructions in *Arban*, 345 F.3d at 404. The court found that the instructions in that case sufficed for an FMLA interference or retaliation claim. *Id*. at 405. The court concluded that because "the instructions, taken as a whole, indicate that the jury was required to find that the 'true reason for [the Plaintiff's] termination was that he took a medical leave,' no error has been demonstrated." *Id.* The relevant instructions given by the district court in the present case are nearly identical in a word-for-word comparison with those given in *Arban*.

Weimer attempts to distinguish *Arban* on its facts. Arban's employer alleged that Arban was discharged for a reason totally separate from his taking of FMLA leave. Specifically, the employer alleged that Arban was discharged for misrepresenting a preexisting account as new sales activity in violation of company policy, for engaging in improper account name-switching, and for other acts of gross negligence, fraud, deceit and lack of moral character. None of these proffered reasons were connected to Arban's exercise of FMLA leave rights. Arban later took FMLA leave before being discharged, and prevailed in proving to a jury that the non-leave-related reasons proffered by the employer were pretextual, and that he was really discharged because he had taken FMLA leave.

Weimer argues that, in the present case, the reason given by Honda for Weimer's discharge was inextricably intertwined with the exercise of FMLA leave rights. Weimer cites to the testimony of the decision-maker:

> Q. Isn't it true that the misrepresentation that you're speaking of is, you're saying that Mr. Weimer misrepresented that he had a serious health condition under the Family Medical Leave Act, and you're saying that was his misrepresentation?

A.  Correct

Without citing any authority, Weimer argues that where the stated reason for discharge is that the employee lied about qualifying for FMLA leave, the pretext line of cases do not apply, and the jury instructions approved of in *Arban* are not appropriate.

The legal analysis is not changed in this case because the reason given for Weimer's discharge is that he lied about his medical symptoms and the activities he engaged in while on leave. Ultimately, the jury was called upon to decide whether Honda terminated Weimer for violating its Standards of Conduct by lying, or whether Honda terminated Weimer for exercising his FMLA rights by taking FMLA leave. The specific subject of Weimer's alleged misrepresentation is not relevant. What is relevant is whether Honda had cause to terminate Weimer for misconduct and in fact did terminate him for that reason, or whether Honda terminated Weimer for taking FMLA leave.

Although we are bound by *Arban* to conclude that the district court did not err in instructing the jury, an apparent flaw in this circuit's FMLA jurisprudence should be noted in this opinion. Despite laying out separate prima facie elements for interference versus retaliation claims, the court in *Arban* dissipated any meaningful distinction between the two with regard to jury instructions by affirming a district court's use of jury instructions that omitted the prima facie elements of an interference claim and provided the elements of a retaliation claim only. *See id.*, at 404-05. The court held that the instructions sufficiently explained *both* claims, *id.*, even though they provided the elements for the retaliation claim only.

By repeating almost verbatim the instructions quoted in *Arban*, the district court in the present case committed the same error. The court instructed the jury as follows:

> Under the Family and Medical Leave Act, it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right under the FMLA. It is also unlawful under the FMLA for an employer to discharge or in any other manner retaliate against an employee for exercising his rights under the FMLA.
>
> In order for Plaintiff to prove that Defendant *interfered with*, restrained, discriminated, or *retaliated* against him because he took leave, Plaintiff must establish the following elements by a preponderance of the evidence:
>
> 1. That he engaged in any activity protected by the FMLA;
> 2. That this exercise of his protected rights was known to Defendant;
> 3. That Defendant thereafter took an employment action adverse to Plaintiff; and
> 4. That there was a causal connection between the protected activity and the adverse employment action.

(Emphasis added.) Because these instructions purport to cover both types of FMLA claims, yet provide the prima facie elements for a retaliation claim only, they merge the two theories. This blending is not especially troublesome in the instant case because Weimer refused to make known under which theory he was proceeding, but it could be problematic in other cases, particularly those in which a plaintiff has a strong interference claim. Thus, noting this flaw does not compel a different result in this case.

**2. Serious health condition**

Weimer contends that he presented facts sufficient for a jury to determine that he had a serious health condition during the whole duration of his leave. He suffered a workplace blow to the head resulting in symptoms that caused him to be ordered off work for more than three consecutive calendar days. He was treated more than once for the condition. Dr. Dunkin stated that

9

Weimer was unable to work. HP physicians put Weimer off work because it was unsafe for him and his co-workers for him to be working given the symptoms he reported. The ability to work safely was an essential function of every Honda Associate position.

The employer's intent is not a relevant part of the entitlement inquiry under 29 U.S.C. § 2615. *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Arban*, 345 F.3d at 401.

However, in this case, Honda presented evidence that Weimer lied to his doctors about not doing any home projects while on leave, and just sitting around. Dr. Dunkin testified that Weimer's leave was continued based on his subjective complaints of headaches and blurred vision. The jury was able to consider this evidence in determining whether Weimer was entitled to take leave in the first place. Whether Weimer suffered from a serious health condition was a threshold issue for the jury to decide.

### 3. Causal connection

Weimer argues on appeal that the district court erred by instructing the jury that he needed to prove that Honda's proffered reason for discharge was a pretext and/or not honestly held. For purposes of summary judgment, the Sixth Circuit has clearly adopted the burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973), where a plaintiff's showing of a causal connection between the exercise of a protected right and the adverse employment decision is based on indirect evidence. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). One method of showing that the employer's proffered reason for

taking the adverse employment action was pretextual is to attack the credibility of the stated reason. Where the employer can demonstrate an honest belief in its proffered reason, the inference of pretext is not warranted. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). This is the "honest belief rule." "Under the honest belief rule, an employer's proffered reason is considered honestly held where the employer can establish it 'reasonably reli[ed] on particularized facts that were before it at the time the decision was made.'" *Joostberns v. United Parcel Services, Inc.*, 2006 WL 41189, *6 (6th Cir. Jan. 9, 2006) (citing *Smith*, 155 F.3d at 806-07; *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)).

Although it is generally inappropriate to instruct a jury on the *McDonnell Douglas* analysis as such, as long as the given jury instructions accurately summarize the law, it is not reversible error for a trial court to refer to burden-shifting analysis. *Brown v. Packaging Corp. of Amer.*, 338 F.3d 586, 593 (6th Cir. 2003). Where a judge explains *McDonnel Douglas* as "a backdrop to the jurors' role as factfinders, and that their ultimate duty is to determine whether (1) the employer's proffered legitimate reason for an adverse employment action was pretextual and (2) the employer's true motive for taking the adverse action was illegal discrimination," there would be no error. *Id*. at 599 (Clay, concurring). In this case, the instructions incorporate elements from *McDonnell Douglas*, such as the concept of a causal connection between the protected activity and the adverse employment action, and the honest belief rule, but they did not impose any improper burdens on the plaintiff in so doing.

Weimer's case-in-chief was premised on Honda ignoring the fact that its own physicians kept Weimer off work pending clearance from various specialists. The regulations provide that an

employee cannot perform his job if a physician states that the employee cannot perform one or more essential functions of the position. 29 C.F.R. § 825.115. An essential function of the job at issue in this case was the ability to perform one's job safely. Weimer asserts that the only way the jury should have been able to decide against him was to conclude that he had deliberately lied to the physicians to go on FMLA leave, and he did not actually have a serious health condition. If Weimer engaged in personal behavior at home that was beyond the job-related restrictions given to him by his physicians, he argues he could do so at his own risk. Such behavior should not affect the determination of whether he had a serious health condition under the FMLA.

However, the FMLA is not a strict-liability statute. *Edgar v. JAC, Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The jury was properly permitted to consider whether Weimer could have been separated for violating Honda's Associate Standards of Conduct, which prohibit misrepresentations in all forms. "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Arban*, 345 F.3d at 401 (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (6th Cir. 1998))

Honda presented evidence from which the jury could have found that Weimer lied to company physicians about his activities at home while on leave, as well as about his medical symptoms. If the jury did find that Weimer made such misrepresentations, they could then conclude that Honda terminated him for the legitimate reason of violating Honda's Standards of Conduct, and not for taking FMLA leave. The jury was also able to use such evidence to conclude that Weimer

12

was not entitled to take FMLA leave in the first place because he did not suffer from a serious health condition.

When considering whether Honda terminated Weimer for a legitimate reason, the jury was instructed that the issue was not so much whether Weimer actually lied, but rather whether Honda reasonably and honestly believed that Weimer lied. With regard to the honestly held belief defense, the district court instructed the jury as follows:

> Defendant asserts that its reason for terminating Plaintiff was because his activities while on leave demonstrated that he misrepresented his need for leave in violation of the Defendant's standards of conduct. Defendant maintains that it honestly believed its asserted reason for discharging Plaintiff.

Weimer argues that the trial court's instructions were improper because they allowed Honda to escape liability if Weimer had a serious health condition, but the employer harbored an "honestly held belief" that he did not have a serious health condition. As seen in the above-quoted passage from the district court's instructions, this is not an accurate representation of the court's instruction. The jury was properly directed to focus on whether causation was or was not established.

Honda presented evidence of its investigation into Weimer's alleged misrepresentations, including the video surveillance tape, interviews with eye-witnesses who saw Weimer working on his porch, and who reported that Weimer admitted that he came back to work because he realized he had been "busted," and interviews with Weimer himself. Weimer's own testimony at trial included contradictory statements about his activities that would lead a reasonable fact finder to question his credibility. There was sufficient evidence for the jury to conclude that Honda reasonably relied on the facts before it at the time its decision to terminate Weimer was made.

13

### 4. Jury instructions as a whole

The district court clearly and repeatedly instructed the jury that defendant could not terminate plaintiff for taking FMLA leave. In delivering its jury instructions, the court stated at least five times that an employer may not discharge an employee for exercising a right provided by the FMLA:

> The FMLA states that taking FMLA-protected leave cannot be used in any manner against an employee and that an employee also cannot be discriminated against due to the exercise of those leave rights. (Tr. Vol. III, at 73).

> If the taking of the FMLA-protected leave is any part of the reason why an employee was discharged, then the employer has violated the employee's FMLA leave rights. (Tr. Vol. III, at 74).

> [T]he FMLA declares that it is unlawful for any employer to interfere with, restrain, or deny the existence of, or the attempt to exercise any right provided by the FMLA. . . . The FMLA prohibits action by an employer to discriminate or to retaliate against an employer for the exercise of rights created under the FMLA. (Tr. Vol. III, at 74).

> In order to prevail on his retaliation claim, Plaintiff must also prove by a preponderance of the evidence that Defendant's stated reason for discharging Plaintiff is not the true reason, but merely a pretext or excuse for retaliation, which means that the true reasons for his termination were not the reasons stated by Defendant, but because Plaintiff took a medical leave. (Tr. Vol. III, at 77).

> If you find that Defendant has stated a legitimate nondiscriminatory reason for terminating Plaintiff, then you must decide in favor of Defendant unless Plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's discrimination against Plaintiff because Plaintiff took FMLA leave. (Tr. Vol. III, at 78).

Looking at the instructions as a whole, as this court must do, the district court was clear in explaining to the jury that their ultimate duty was to determine whether Honda's proffered reason for terminating Weimer was pretextual, and whether Honda's true reason for terminating Weimer

14

was for taking FMLA leave. *Arban*, 345 F.3d at 405. The instructions, as given, would not cause the jury to be misled in their duty.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.