ROSEN, Chief District Judge,
concurring.
I agree with and concur in Part II.B of the Majority Opinion, and I join in the Judgment. I write separately on Plaintiffs FMLA interference claim discussed in Part II.C of the Opinion as I find that the district court properly applied the “honest belief rule” to the interference claim in this case where the issue presented was not simply the employee’s entitlement to leave under the FMLA, but rather the employee’s abuse of his FMLA leave rights. I also disagree with the majority’s conclusion that Tillman “failed to show entitlement to FMLA leave in the first place,” and, therefore, failed to satisfy the third prong of his prima facie case. I believe that this element of the prima facie case was satisfied once Tillman submitted to Ohio Bell the medical certification of his doctor establishing that he suffers from a “serious health condition that makes [him] unable to perform the functions of [his job]” and certifying a “medical necessity” for “intermittent [FMLA] leave,” and Ohio Bell accepted the certification without questioning it.
I.
Taking the latter point first, in order to establish that an employee requesting leave under the FMLA is qualified for the leave, an employer may require the employee to obtain a medical certification from a health care provider setting forth a description of the employee’s medical condition and information certifying the medical necessity for the leave. See 29 C.F.R. § 825.806. “The medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider.” Novak v. MetroHealth Medical Ctr., 503 F.3d 572, 578 (6th Cir.2007) (quoting Harcourt v. Cincinnati Bell Tel. Co., 383 *356 F.Supp.2d 944, 955-56 (S.D.Ohio 2005) (citing 29 C.F.R. § 825.307(a))).
The record in this case reflects that Tillman provided Ohio Bell with a medical certification from his doctor certifying the medical necessity for intermittent leave for his chronic back condition in May 2008. See R. 32-6. There is nothing in the record to suggest that Tillman’s employer deemed that certification to be inadequate or invalid, or otherwise questioned the doctor’s certification that Tillman suffered from a serious health condition which intermittently rendered him unable to perform his job.[10]
After the initial certification, an employer may require subsequent recertifications subject to the restrictions set forth 29 C.F.R. § 825.308. The regulations provide that an employer may not request recerti-fication more frequently than every 30 days. 29 C.F.R. § 825.308(a),(b). However, employers are not so limited and may request recertification more frequently if “[t]he employer receives information that casts doubt upon the continuing validity of the certification.” 29 C.F.R. § 825.308(c)(3). “The employer may ask for the same information when obtaining recertification as that permitted for the original certification” and, in addition, “the employer may provide the health care provider with a record of the employee’s absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern.” 29 C.F.R. § 825.308(e). The employer must allow at least 15 days after it requests recertification for the employee to provide the requested recertification. 29 C.F.R. § 825.308(d). An employer violates the FMLA if it requests medical certification and then terminates the employee before the 15-day period has run. See Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 555 (6th Cir.2006).
In this case, after providing his original certification in May 2008, Tillman provided Ohio Bell with recertifications from his doctor on October 13, 2008 and February 9, 2009. See R. 32-6. As with the original certification, there is nothing in the record indicating that Ohio Bell deemed any of the recertifications inadequate or insufficient, and nothing indicates that Tillman’s doctor was ever asked to review the pattern of his absences. Furthermore, even though the record indicates that Ohio Bell received information casting doubt upon the continuing validity of the certification after it had received the February 9, 2009 recertification, nothing in the record indicates that Tillman was ever requested to provide any further recertification as provided in the regulations.
Since there is no evidence suggesting that Ohio Bell deemed the February 9, 2009 certification invalid or inadequate and no evidence showing that Tillman was asked to provide any further recertification of his medical condition or the medical necessity for intermittent leave, there is no legal basis for requiring Plaintiff to independently establish that he was qualified for FMLA leave on March 15 and 20, 2009 to satisfy the third prong of prima facie case. “A plaintiffs burden in establishing a prima facie case is not intended to be an onerous one.” Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir.2001); Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir.2007) (“The burden of proof at the prima facie state is minimal....”) Plaintiffs submission of the medical certification which showed that he suffered from “a serious health condition that ma[de] [him] unable to perform the *357 functions of his job” — and his employer’s acceptance of that certification, without objection — already had established that he was statutorily qualified for the leave.
The very nature of “intermittent leave” under the FMLA is that separate blocks of leave time taken within the intermittent leave period will be “due to a single qualifying reason.” See Roberts v. Ground Handling, Inc., 499 F.Supp.2d 340, 352 (S.D.N.Y.2007) (quoting 29 C.F.R. § 825.203(a) (2009)). The Act does not require that a plaintiff who has been granted intermittent leave provide additional proof that he had a serious health condition rendering him unable to work every time he takes a day of leave during the covered period. Indeed, to impose on Tillman the additional requirement that he separately establish that he suffered from a serious health condition on two specific dates — March 15 and 20, 2009 — as the majority’s decision requires, would contravene the statute. See Harcourt v. Cincinnati Bell Tel. Co., 383 F.Supp.2d at 953 (holding that an employer’s recertification requirement more restrictive than the requirements of the FMLA is not enforceable against the employee); see also Callison v. City of Philadelphia, 430 F.3d 117, 121 (3rd Cir.2005) (“[Wjhere an employer’s internal policies conflict with the FMLA, the FMLA controls and the employee need only comply with the requirements of the Act to invoke its protection.”).
Tillman complied with the requirements of the Act when he provided Ohio Bell with a medical certification and recertifications which showed that he suffered from “a serious health condition that ma[de] [him] unable to perform the functions of his job,” and Ohio Bell never challenged those certifications. Tillman, therefore, has sufficiently demonstrated satisfaction of the third prong of a prima facie case of FMLA interference.
II.
As the majority acknowledges, the application of the “honest belief’ rule to an FMLA claimant’s interference claim presents a closer question, largely because our precedents in this interesting corner of FMLA law are not a model of clarity, and attempting to discern a clear rule reveals only that different panels of our Court have produced different answers to this question. What can be distilled from our precedents, however, is that there appear to be two lines of approach to interference claims — one line finding that the employer’s intent, or honest belief, is “irrelevant,” and another finding that, at least where the employer contests entitlement to leave based upon the employee’s purported conduct or activities that undermine his entitlement to leave, the employer may rely upon its honest belief that the employee is not entitled to leave. Discerning these divergent lines of precedent requires a close reading of our cases in this area. However, certain basic things are clear.
First, and foremost, the FMLA does not provide an employee with carte blanche to obtain proper leave and then abuse that leave. Weimer v. Honda of America Mfg., Inc., 2008 WL 2421648, at * 4 (S.D.Ohio 2008) (citing Kariotis v. Navistar Int’l Transp. Corp., 131 F.3d 672, 681 (7th Cir.1997)). This is made clear in the statutory scheme’s conditioning of an employee’s right to reinstatement following FMLA leave on the “eligible employee ... [having] tak[en] leave ... for the intended purpose of the leave.” 29 U.S.C. § 2614(a)(1) (emphasis added). Therefore, an employee who initially obtains valid leave for a qualifying reason and whose doctor supports continued leave — and, thereby, as explained above, meets the qualification prong of the prima facie case — can nonetheless lose the protections *358 of the FMLA when he or she does not use the leave for its intended purpose. Weimer, 2008 WL 2421648, at *4. “ ‘Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave.’ ” Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 284 (6th Cir.2012) (quoting Allen v. Butler Cnty. Comm’rs, 331 Fed.Appx. 389, 395 (6th Cir.2009)); Hall v. Ohio Bell Tel. Co., 529 Fed.Appx. 434, 2013 WL 2986991 (6th Cir. June 17, 2013); Callison v. City of Philadelphia, 430 F.3d 117, 121 (3rd Cir.2005).
“[A]n employer’s honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee’s substantive rights FMLA claim.” Crouch v. Whirlpool Corp., 447 F.3d 984, 986 (7th Cir.2006) (citing Kariotis, 131 F.3d at 681); see also Warwas v. City of Plainfield, 489 Fed.Appx. 585, 588 (3d Cir.2012) (holding that an employer may defeat an FMLA interference claim if the employment decision “was based upon an-honest belief that the plaintiff either misused or failed to use her medical leave for the intended purpose”); see also Medley v. Polk Co., 260 F.3d 1202, 1203, 1208 (10th Cir.2001) (reversing case for failure to instruct the jury that “an employer who honestly believes that it is discharging an employee for misusing FMLA is not liable even if the employer is mistaken”).
Next, I respectfully disagree with the majority’s opinion that “honest belief’ rule should not be applied in FMLA interference cases because “our interference-claim precedents repeatedly disclaim consideration of the employer’s intent.” It is true that in “absolute entitlement” cases where the only issue is whether the employer affirmatively interfered with the employee’s use or attempted use of leave to which he or she was unquestionably entitled as a matter of law, the employer’s intent is not relevant and the employer’s honest belief that it acted in compliance with the law provides no defense. See e.g., Arban v. West Publ’g Corp., 345 F.3d 390, 401 (6th Cir.2003) (“Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.” (citation omitted)); Edgar v. JAG Products, Inc., 443 F.3d 501, 508 (6th Cir.2006) (“The employer’s intent is not a relevant part of the [interference] inquiry under [the FMLA].”). However, as the majority acknowledges, neither Arban nor Edgar address claims of FMLA abuse. In interference cases in which the employer honestly believes that the employee is abusing his leave — by, for example, misrepresenting his medical condition — no circuit precedent precludes the employer from asserting this honest belief in its defense.
Furthermore, in Grace v. USCAR, 521 F.3d 655, 670 (6th Cir.2008), we held that the McDonnell Douglas burden-shifting framework — a well-established evidentiary path used to resolve the issue of intent in employment discrimination cases — applied to both FMLA retaliation and interference claims. Grace, 521 F.3d at 670; see also Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir.2012); Romans v. Michigan Dep’t of Human Servs., 668 F.3d 826, 841 (6th Cir.2012); Gates v. United States Postal Service, 502 Fed.Appx. 485, 489-90 (6th Cir.2012). And, it is well-settled in our circuit that the honest belief rule can be used by an employer in the McDonnell Douglas construct to refute a plaintiffs prima facie case. See e.g., Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir.1998) (quoting Pesterfield v. TVA, 941 F.2d 437, 443 (6th Cir.1991)); Blizzard v. Marion Technical College, 698 F.3d 275, 286 (6th Cir.2012).
*359 Prior Sixth Circuit FMLA decisions simply do not entirely foreclose the application of the “honest belief’ rule in all interference cases. To the contrary, as the majority acknowledges, our circuit has applied the “honest belief’ rule to at least a certain subset of interference claims. For example, just last year, we determined that the honest belief rule applies in both FMLA retaliation claims and interference claims in Donald v. Sybra, Inc., supra, 667 F.3d at 763.[11] See also Weimer v. Honda of America Mfg., Inc., 356 Fed.Appx. 812 (6th Cir.2009) (approving application of the honest belief defense to an FMLA interference claim); Adams v. Auto Rail Logistics, Inc., 504 Fed.Appx. 453, 457 (6th Cir.2012) (to defeat the plaintiffs FMLA interference claim, the defendant “need only demonstrate that it believed the plaintiff was misusing the FMLA such that it would have discharged the plaintiff despite any legitimate leave.”)
Our decision in Weimer provides a good illustration of these principles. In Weimer, the plaintiff was granted FMLA leave by his employer, Honda of America, after being diagnosed with a concussion and a muscle strain as a result of a blow to the head. Honda subsequently learned that Weimer had been seen building a porch on his house when he was supposed to have been incapacitated. Following an investigation, Weimer’s employment was terminated for violation of the company’s Standards of Conduct which, in relevant part, prohibited “[m]isprepresent[ing] facts or falsifying] records or reports, such as personnel records, medical records, leave of absence documentation, inventory counts, quality control reports, etc.” See Weimer, 356 Fed.Appx. at 814 (first alteration in original). Weimer thereafter brought suit. After the district court denied the parties’ cross-motions for summary judgment, the case went to trial and the jury returned a verdict in favor of Honda. Id. at 813. Weimer appealed arguing that the district court erred in instructing the jury on the honest-belief defense and pretext. Id.
The appellate court first determined that the plaintiffs claim was an entitlement/ interference claim, even though counsel would not specify whether the claim in the complaint was an interference or a retaliation claim. Id. at 815 (‘We therefore conclude that this case is brought pursuant to 29 U.S.C. § 2615(a)(1) for interference and restraint.”). Turning to the honest belief rule, the court found no error in presenting the honest belief and pretext instruction to the jury. Id. at 818. The court explained that “the FMLA is not a strict-liability statute.” Id. (citing Edgar, supra, 443 F.3d at 507). Because evidence was presented from which the jury could have found that Weimer had lied to company physicians about his medical condition and activities at home while on leave, the jury could have concluded that the employer had a legitimate reason for its actions. Id.[12] Significantly, the *360 court found that the jury was properly instructed that, when considering whether the employer had demonstrated a legitimate reason for its actions, the focus was to be “not so much whether Weimer actually lied, but rather whether Honda reasonably and honestly believed that Weimer lied.” Id. (emphasis added). Finally, the court determined that “[t]here was sufficient evidence for the jury to conclude that Honda reasonably relied on the facts before it at the time its decision to terminate Weimer was made.” Id. at 819.
Beyond our circuit, although a similar muddle can be seen in some circuits, no circuit has held that the honest belief rule does not apply in interference cases, and at least three other circuits have clearly applied the honest belief doctrine to FMLA interference claims. The Third, Seventh and Tenth Circuits have each held an employer can defend against an FMLA interference claim by showing that it honestly believed the employee did not take FMLA leave for its intended purpose. See Scruggs v. Carrier Corp., 688 F.3d 821, 825-26 (7th Cir.2012); Vail v. Raybestos Prods. Co., 533 F.3d 904, 909 (7th Cir.2008); Crouch, 447 F.3d at 986-87; Parker v. Verizon Pa., Inc., 309 Fed.Appx. 551, 563 (3d Cir.2009); Medley v. Polk Co., 260 F.3d 1202, 1207-08 (10th Cir.2001). Further, appellate courts have affirmed the entry of summary judgment in favor of the employer based upon the employer’s honest belief that the employee was misusing FMLA leave. See Scruggs, 688 F.3d at 826 (employer had honest suspicion that employee was not using his FMLA leave to assist in his mother’s care); Vail, 533 F.3d at 909-10 (employer had honest belief that employee who had been granted FMLA leave because of her migraine headaches was using her leave to work for her husband’s lawn mowing service); Crouch, 447 F.3d at 987-88 (employer honestly believed that the employee was using FMLA leave for vacation purposes instead of recovering from an injured knee); Parker, 309 Fed.Appx. at 563 (employer established it had an honest belief that plaintiff had misrepresented his health condition).
In addition to these courts, many district courts — including a number of them within the Sixth Circuit — have held that the honest belief defense applies to FMLA interference claims. See e.g., Lineberry v. Richards, 2013 WL 438689, at *6-7 (E.D.Mich. Feb. 5, 2013); Reinwald v. Huntington Nat’l Bank, 684 F.Supp.2d 975, 984-85 (S.D.Ohio 2010); Stanley v. Volvo Parts of N. Am., 2008 WL 2473658, at *4 (S.D.Ohio June 17, 2008); Kitts v. General Telephone North, Inc., 2005 WL 2277438 at *12-13 (S.D.Ohio Sept. 19, 2005); Stonum v. U.S. Airways, Inc., 83 F.Supp.2d 894, 899-902 (S.D.Ohio 1999); Casseus v. Verizon N.Y., Inc., 722 F.Supp.2d 326, 336 (E.D.N.Y.2010); Nelson v. Oshkosh Truck Corp., 2008 WL 4379557, at *4 (E.D.Wis. Sept. 23, 2008); Brown v. Conopco, Inc., 2007 WL 3224586 at *6 (D.Md. Oct. 24, 2007); Moughari v. Publix Super Markets, Inc., 1998 WL 307454 at *2 (N.D.Fla. Apr. 27, 1998), aff'd without opinion, 170 F.3d 188 (11th Cir.1999).
Moreover, to preclude consideration of the employer’s honest belief in this case simply makes no sense. We have already concluded that in terminating Plaintiffs employment for fraudulent conduct in violation of the company’s Code of Business Conduct, Ohio Bell held an honest belief based on particularized facts that Plaintiff had abused his FMLA leave on March 15 and 28, 2009, and, therefore, Plaintiff could not make out an FMLA retaliatory discharge claim. It would be nonsensical to *361 deny the Defendant the right to rely on its honest belief that Plaintiff was not using his FMLA leave on those dates for its intended purpose to refute Plaintiffs interference claim that he was “denied FMLA benefits to which he was entitled.”
In summary, although our precedent in this area is not pristinely clear, two lines of interference claim analyses emerge: one in which the issue is simply whether the employee is “absolutely entitled” to leave, and the employer makes no claim that it suspects the employee is abusing his leave; and a second line in which an employer shows that it has an honest belief that the employee has abused his leave in some way. In the former cases, an employer’s intent is indeed irrelevant because the only question is whether the employee is entitled to leave. In the latter cases, however, the employer’s intent is quite relevant.
Viewed in this context, our precedents reflect that the “absolute entitlement” case law is of limited application in eases such as this one, where the issue is not simply the employee’s use of leave to which he is entitled under the FMLA, but rather his abuse of his FMLA leave rights. In interference cases arising under these circumstances, the honest belief rule may be applied. See e.g., Vail, 533 F.3d at 909 (characterizing the issue presented in plaintiffs FMLA interference claim as “whether [plaintiff] was abusing her leave or whether Raybestos interfered with her rights” and applying the honest belief rule to resolve this issue); see also Parker v. Verizon, 309 Fed.Appx. at 563:
Parker has not shown that he is entitled to FMLA benefits.... Parker was not terminated for his use, but rather his misuse, of medical leave in violation of [the company’s] Code of Business Conduct. ... Regardless of Parker’s denial that he actually misrepresented his health condition, Verizon’s honest suspicion that Parker misused his leave prevents it from being found liable for violating the FMLA....
Id. (citations omitted).
This leaves only the majority’s view that last year’s Donald decision should be read as approving the use of the rule in interference cases only to prove that the employer had “a legitimate reason unrelated to the exercise of FMLA rights.” See Donald, 667 F.3d at 762-63 (emphasis added) (employer entitled to rely on its honest belief that plaintiff was guilty of theft to defeat both plaintiffs FMLA interference and retaliation claims).
The majority’s misapprehension of the “unrelated reason” requirement is understandable in light of its history in this circuit. The “unrelated reason” requirement appears to have had its genesis in our circuit’s jurisprudence in Arban v. West Publ. Corp., supra, where, in affirming the district court’s denial of the defendant’s motion for a judgment as a matter of law, the appellate court quoted Gunnell v. Utah Valley State Coll., 152 F.3d 1253 (10th Cir.1998), as authority for holding, •without further edification, that “ ‘[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee’s request for or taking of FMLA leave.’ ” Arban, 345 F.3d at 401 (quoting Gunnell, 152 F.3d at 1262) (emphasis added). But in relying on Gunnell, the Arban court appears to have ignored the context of the Gunnell court’s pronouncement. In Gun-nell, the plaintiff “specifically refused to argue that she was fired because of her FMLA request.” 152 F.3d at 1262. It was solely on the basis of the plaintiffs concession that the Tenth Circuit affirmed the district court’s grant of summary judgment in favor of the employer on Gunnell’s *362 interference claim. See id. (“In light of this concession, any reason for terminating Gunnell’s employment would not involve FMLA, and consequently the statute can afford her no relief.” Id.) The relatedness or unrelatedness of the employer’s reason for the employment decision, however, never was an issue in the case.
Although the Gunnell excerpt in Arban has been repeatedly quoted and rotely relied upon in subsequent years, our later cases have done nothing to clarify or explain the holding. Then, three years after Arban, the court bolstered the Arban court’s holding by declaring in Edgar, “Both the statute and the DOL regulation likewise establish that interference with an employee’s FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.” Edgar, 443 F.3d at 508.
Not surprisingly, there is no statutory or regulatory citation for this proposition in Edgar because neither the statute nor the regulations even remotely suggest any such thing.[13] Nonetheless, Edgar has since been repeatedly cited and accepted, without limitation, as authority for the proposition that “interference with an employee’s FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights.” See, e.g., Grace v. USCAR, 521 F.3d at 669; Harris v. Metro. Gov’t of Nashville and Davidson Cnty., Tenn., 594 F.3d 476, 483 (6th Cir.2010); Romans v. Michigan Dep’t of Human Servs., 668 F.3d at 841; Mitchell v. Cnty. of Wayne, 337 Fed.Appx. 526, 532 (6th Cir.2009); Allen v. Butler Cnty. Comm’rs, 331 Fed.Appx. 389, 394 (6th Cir.2009). Cf., Adams v. Auto Rail Logistics, Inc., 504 Fed.Appx. 453. It is out of this quagmire of questionable authority that the “unrelated reason” requirement has emerged. It is time to clear away the brush and finally clarify the matter.
While an “unrelated reason” rule may fit in cases like Donald where there is no question or suspicion as to the legitimacy of the plaintiffs request or need for FMLA leave,[14] where, as here, the legitimacy of the employee’s taking of FMLA leave itself is at issue, it is unrealistic to require that the employer’s reasons for its *363 actions be “unrelated” to the taking of the leave. If that were the case, employers would effectively be precluded from ever taking any adverse action against an employee who fraudulently or dishonestly requests FMLA leave or misuses or abuses FMLA leave because any action necessarily would be related to the taking of leave, and, hence, constitute a violation of the Act.
The incongruity of requiring that an employer’s reason be shown to be “unrelated” to the exercise of FMLA rights in order to permit application of the “honest belief’ rule is demonstrated in cases where the evidence shows that the employee’s abuse of FMLA leave constitutes a violation of an employment rule or “code of conduct.” In an attempt to adhere to the “unrelated” requirement in such cases, courts focus on the violation of the work rules. See e.g., Parker v. Verizon, supra, 309 Fed.Appx. 551 (granting summary judgment in favor of the defendant employer where the employer demonstrated that the plaintiff was terminated for violating the company Code of Business Conduct by misusing FMLA medical leave); Warwas v. City of Plainfield, supra, 489 Fed.Appx. at 588 (holding that where employer had a Shop Rule providing that it had just cause to terminate employees for falsification of personnel or any other company form, the defendant’s “honest belief that [the plaintiff] had violated company policy by fraudulently obtaining disability leave” foreclosed the plaintiffs FMLA claim and entitled the defendant to summary judgment).
We similarly focused on the violation of a work rule in Weimer, supra. In that abuse of leave case, we rejected the plaintiffs argument that the jury was improperly instructed pursuant to instructions approved in Arban because the reason given by Honda for Weimer’s discharge — making misrepresentations concerning his FMLA leave in contravention of the company’s Associate Standards of Conduct[15]— was “inextricably intertwined with the exercise of FMLA rights,” whereas in Ar-ban, the defendant-employer alleged that the plaintiff was discharged for reasons “totally separate from his taking of FMLA leave,” i.e., for misrepresenting a preexisting account as new sales activity in violation of company policy, for engaging in improper account name-switching, and for other acts of gross negligence, fraud, deceit and lack of moral character. 356 Fed. Appx. at 816. We categorically rejected Weimer’s argument stating:
The legal analysis is not changed in this case because the reason given for Weimer’s discharge is that he lied about his medical symptoms and the activities he engaged in while on leave. Ultimately, the jury was called upon to decide whether Honda terminated Weimer for violating its Standards of Conduct by lying, or whether Honda terminated Weimer for exercising his FMLA rights by taking FMLA leave. The specific subject of Weimer’s alleged misrepresentation is not relevant.
Id. (emphasis added).
We treated the employer’s reason for discharging the employee similarly in Adams v. Auto Rail Logistics, Inc., supra. In that case, the plaintiff had requested FMLA leave to care for his sick daughter. Although the plaintiff admitted that he no longer needed to care for his daughter after December 26, 2007, he did not return to work until January 8, 2008. Based upon its belief that Adams had misused these 15 days of leave time, Auto Rail terminated his employment for “fraud and dishonesty.” 504 Fed.Appx. at 455. A *364 trial was subsequently held and the jury found in favor of the employer.
On appeal, Adams argued that for “fraud and dishonesty” to constitute a qualifying “unrelated” reason defense, the defendant had to prove that he committed fraud and satisfy the elements of fraud under state law. The court rejected that argument:
Fraud and dishonesty are ... lawful bases for termination. However, the defendant is not required to prove the elements of fraud under state law. It need only demonstrate that it believed that the plaintiff was misusing the FMLA such that it would have discharged the plaintiff despite any legitimate FMLA leave.
Id. at 457 (citation omitted).
In each of the above cases, the honest belief rule was applied. It would be disingenuous to say that application of the honest belief rule was permitted in these cases because the violation of a work rule was the reason for the employer’s action, and hence, was a “legitimate reason unrelated to the exercise of FMLA rights.” As is evident from the foregoing discussion, no matter how forcefully courts might insist to the contrary, it is inescapable that in cases such as those discussed above, a violation of a work rule — and hence, a termination of employment or other adverse employment action taken as a result of that violation — is not unrelated to the taking of FMLA leave. If the honest belief rule may be used in cases involving a work rule violation arising out of abuse or misuse of FMLA leave, there is no logical reason why the underlying abuse itself should be treated any differently.
The case before us makes this very clear, and I would find that the district court properly applied the “honest belief’ rule to Plaintiffs FMLA interference claim and properly granted Defendant’s motion for summary judgment on that claim based upon application of the rule. The record reflects that Ohio Bell made a reasonably informed and considered decision based upon the particularized facts before it at the time. Ohio Bell’s FMLA Department Manager, Mary Glass, testified that the decision to deny Tillman FMLA leave for his absences from work on March 15 and 28, 2009 was based on the surveillance tapes and the private investigator’s report, Tillman’s statements in Patrick McCreary’s interview, Dr. Conibear’s report, Tillman’s e-mail to his supervisor indicating he would take FMLA leave on December 13 if he got assigned to the night shift, and his pattern of using FMLA days on weekends or combined with his days off and holidays to extend his time away from work. [See R. 32, SJ Ex. H, Glass Dep. pp. 65-66.] This evidence provided sufficient particularized facts to support a reasonable belief that Plaintiff had abused his FMLA leave on March 15 and 28, 2009, and Plaintiff has failed to produce evidence to raise a genuine issue of material fact as to the reasonableness of Defendant’s reliance on those particularized facts or to otherwise establish that his employer did not honestly believe that he had abused his FMLA leave. I would, therefore, affirm the district court’s decision granting the defendant’s motion for summary judgment on Plaintiffs FMLA interference claim on this basis.
With respect to Plaintiffs FMLA retaliation claim, I join in the majority opinion. More generally, I agree that the district court’s judgment in favor of the Defendant should be affirmed.

. If an employer has a reason to doubt the validity of the certification, it may, at the expense of the employee, require a second medical opinion. 29 U.S.C. § 1613(c)(1).

. It is true that, in Jaszczyszyn v. Advantage Health Physician Network, 504 Fed.Appx. 440 (6th Cir.2012), the court declined to read Donald as either adopting or rejecting the "honest belief" rule within the context of FMLA interference claims, but this was because, in its view, "that opinion does not address the issue clearly, let alone explicitly." Id. at 449. However, the Jaszczyszyn court made no affirmative determination that the honest belief rule was inapplicable; rather the court found it unnecessary to deal with the rule because it determined that the record established that the plaintiff "had been given all the leave to which she was entitled.” Id. The court concluded that Jaszczyszyn’s interference claim failed as a matter of law on this alternative ground. Id.

. The court also determined that "[t]he jury was also able to use such evidence to conclude that Weimer was not entitled to take FMLA leave in the first place because he did *360 not suffer from a serious health condition.” 356 Fed.Appx. at 818.

. In Adams v. Auto Rail Logistics, Inc., 504 Fed.Appx. 453, the court appears to have at least attempted to provide the regulatory authority missing in Edgar and its progeny. There, as support for the "unrelated reason” rule, the court quoted from a portion of 29 C.F.R. § 825.216(a):
An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration of employment.
See Adams, 504 Fed.Appx. at 456 n. 1.
However, the part of the regulation not quoted in Adams makes clear that this unrelated reason justification is intended to apply only in limited circumstances. Specifically, it is only when the employee is laid off or his shift has been eliminated while he was on leave, or the employee was hired for a term or project which ended while he was on leave that the employer must demonstrate that the employee "would not otherwise have been employed” at the time reinstatement is requested. 29 C.F.R. § 825.216(a)(l)-(3). Nothing in this regulation even remotely requires that an employer show that its legitimate reason is “unrelated” to the employee’s exercise of FMLA rights in all cases.

. Though the court in Donald noted that there were disputes as to whether the plaintiff's had properly invoked the FMLA when she notified her employer that she was going to be absent, her employer did not question the legitimacy of the reason for the leave: extreme pain following treatment for renal stones. See Donald, 667 F.3d at 760-61.

. See Weimer, 2008 WL 2421648.